UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CHARLES BLACKWELL**,

    Plaintiff,

v.

**CITY OF INKSTER**, a municipal
corporation, and **PATRICK ANDRE
WIMBERLY**, in his individual and
official capacities,

    Defendants.

_____ /

Case No. 21-cv-10628

Hon. Linda V. Parker
Hon. Mag. J. Elizabeth A. Stafford

| | |
|---|---|
| Bonsitu Kitaba-Gaviglio (P78822) | Howard Burdett (P63185) |
| Daniel S. Korobkin (P72842) | Cooperating Attorney, American Civil |
| American Civil Liberties Union |   Liberties Union Fund of Michigan |
|   Fund of Michigan | Howard & Howard Attorneys PLLC |
| 2966 Woodward Ave. | 450 W 4th St. |
| Detroit, MI 48201 | Royal Oak, MI 48067-2557 |
| (313) 578-6823 | (248) 723-0381 |
| bkitaba@aclumich.org | bburdett@howardandhoward.com |
| dkorobkin@aclumich.org | *Attorney for Plaintiff* |
| *Attorneys for Plaintiff* | |

---

## AMENDED COMPLAINT
## FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

## JURY TRIAL DEMANDED

    Plaintiff Charles Blackwell brings this Amended Complaint for Declaratory,

Injunctive, and Other Relief against the Defendants City of Inkster, a municipal

corporation, and Patrick Andre Wimberly, in his official and individual capacities as Mayor of the City of Inkster (collectively "Defendants") pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) and state as follows:

## INTRODUCTION

1.     Plaintiff brings this First Amendment action to challenge an unconstitutional policy and practice of the City of Inkster, the Police Department, and Mayor to prohibit or impede individuals from engaging in political speech and expressing their political viewpoint on the City of Inkster Police Department Facebook page and the Mayor's municipal Facebook page, which are designated or limited public forums subject to constitutional free speech protection.

2.     The First Amendment to the United States Constitution protects the rights of individuals to speak freely on matters of public debate in public forums without fear of government censorship or retaliation because of their viewpoint.

3.     The protection of free expression by the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that

changes may be obtained by lawful means . . . is a fundamental principle of our constitutional system." *Id*.

4.      Political speech is at the core of what the First Amendment is designed to protect and therefore is entitled to the greatest constitutional protection.

5.      Defendants adopted an unconstitutional policy of prohibiting or impeding comments of a political nature and/or viewpoints that are critical of the Inkster government on their municipal Facebook pages, which are intentionally created by Defendants to be public forums.

6.      In early 2021, the City of Inkster Parks and Recreation director was accused of embezzling public funds for his own personal use.

7.      In March 2021, Defendant City of Inkster's police chief posted a video of himself reading a children's book on the Police Department's official Facebook page in celebration of Reading Month.

8.      Seeking to bring attention to the allegations of embezzlement and the lack of transparency within the Inkster government, Plaintiff wrote a comment underneath the police chief's video implicitly criticizing the chief and urging him to be transparent about Mayor Wimberly's involvement. (Exhibit A: Detroit Free Press article).

9.      The City of Inkster deleted Plaintiff's comment on the police chief's video and blocked Plaintiff from the Inkster Police Department's Facebook page.

10.    Other comments were posted by Facebook users on the chief's video, including comments thanking the chief and positive reactions to the reading. Those comments were not deleted and remain visible for other users to view and engage with.

11.    Plaintiff has also posted critical comments of the Mayor and Parks and Recreation director investigation on the municipal Facebook page of Mayor Wimberly and has been blocked and his comments deleted.

12.    Other comments that celebrate and/or are neutral towards the Inkster Mayor and government are also posted by the public on the Mayor's municipal Facebook page and were not deleted. Those comments remain visible for other users to view and engage with.

13.    Defendants' policy of banning individuals from their official municipal Facebook pages and removing their comments because they are political and/or are critical of government actors and actions, violates the First Amendment, both facially and as applied to Plaintiff.

14.    Accordingly, Plaintiff seeks declaratory and injunctive relief to invalidate and bar enforcement of the policy, as well as damages for the constitutional violations committed by Defendants.

## PARTIES

15.   Plaintiff Charles Blackwell is a resident in the Eastern District of Michigan and is an activist who tackles corruption, transparency, and open government issues with multiple municipalities in the Metro Detroit area.

16.   Defendant City of Inkster is a state-chartered municipal corporation organized and existing under the laws of the State of Michigan, located within the Eastern District of Michigan.

17.   Defendant Patrick Andre Wimberly is, or was at all times relevant to this Complaint, the Mayor of the City of Inkster and the executive head and chief administrative officer of the city. Mayor Wimberly is sued in his official and individual capacities. Upon information and belief, he resides within the Eastern District of Michigan.

## JURISDICTION AND VENUE

18.   The Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343, because federal questions are presented in this action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

19.   This court has jurisdiction to provide declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

20.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendants reside within this judicial district, and this district is where the events or omissions giving rise to the claims asserted by Plaintiff occurred or will occur.

## FACTUAL ALLEGATIONS

**Public Investigation into Inkster Parks and Recreation Director**

21.    In February 2021, the City of Inkster Parks and Recreation director Alex Legion resigned amid allegations that he pocketed funds paid by the Joe Biden presidential campaign to rent a city facility for a campaign event prior to the 2020 presidential election.

22.    News outlets reported that the president's campaign paid $1,500 to Signature Milestones, LLC in November 2020 for event facility rental, and Mr. Legion is listed as a managing partner of that company, according to state corporate records from 2019. City officials learned that Mr. Legion had been renting out the city's recreation complex to friends and used the money from Biden's presidential campaign in part to renovate his city office. (Exhibit A.)

23.    Defendant Wimberly and the City of Inkster police department launched an investigation into the allegations against Mr. Legion. (Exhibit C: Alex Legion Police Report.) City officials concluded the investigation and found that Mr. Legion was required to repay the funds with no further action or discipline.

24.    On February 11, 2021, the Inkster Parks and Recreation Commission voted 5-1, with one member abstaining, to request an independent police investigation of Mr. Legion's possible embezzlement from Inkster's City Council. (Exhibit A.)

25.    The Commission wrote a letter to Inkster's City Council about their concerns with the incomplete investigation conducted by Defendant Wimberly and police department, and urged them to launch an independent investigation of the matter. (Exhibit D: Inkster Parks and Recreation Commission Request).

26.   In public statements, Shirley Hankerson, chairperson of the Commission, stated that the Commission called for an independent investigation because it was not satisfied with the Inkster police department's investigation and communications by Defendant Wimberly provided at the February 1, 2021 City Council meeting. (Exhibit A.)

27.    In the letter to Inkster City Council, the Inkster Parks and Recreation Commission stated that if the City Council failed to act, the Commission would contact the Federal Bureau of Investigation with "our suspicion of collusion, corruption, running a criminal organization of city hall, and misuse of public funds." (Exhibit D.)

28.   Plaintiff, who routinely follows local news and current events, had a genuine and legitimate concern of corruption taking place in the Inkster Recreation

Department and Inkster City Hall after reading news reports of the embezzlement allegations and questionable investigation.

29.   The Inkster Parks and Recreation Commission, which is a public body of the Inkster government, shared those same concerns.

30.   On or about March 18, 2021 Plaintiff commented on a post on the City of Inkster Police Department's Facebook page in which the police chief William Riley was speaking and reading a children's book in a video visible to the general public and anyone who follows the page.

31.   Considering the ongoing Alex Legion investigation and embezzlement scandal, Plaintiff commented underneath the video: "Chief Riley: How about you teach the kids the word 'Corruption' and tell them about how Alex Legion stole money from the recreation center and Mayor Wimberly knew about it." (Exhibit B.)

32.   A screen shot of the Facebook video and Plaintiff's comment is reproduced below:



33.    On or about March 19, 2021 Plaintiff visited the Defendant City of Inkster Police Department's Facebook page again and noticed that his comment had been deleted.

34.    Plaintiff also noticed that the City of Inkster Police Department had blocked or impeded him from commenting on further posts on the page and

prohibited him from sending direct messages to the inbox of the Inkster Police Department Facebook page. (Exhibit E: Police Department Blocked Post).

35.   In Exhibit E, on the left-hand side is a view of the Plaintiff's restricted privileges. He is not permitted to comment on or "Like" Facebook posts on the Inkster Police Department Facebook page. On the right-hand side is a view of the privileges of all other Facebook users who have not been blocked or restricted; they can freely comment and participate in dialogue on the Defendant City of Inkster Police Department Facebook page.

36.   In Exhibit F: Police Department Blocked Access, on the left-hand side is a view of Plaintiff's restricted privileges of being blocked and prohibited from sending the Defendant City of Inkster Police Department a "direct message" or a private message to their Facebook inbox. On the right-hand side, is a view of the privileges of all other Facebook users who have not been blocked or restricted by the Defendant who have access to send direct messages to the Defendant City of Inkster Police Department Facebook page.

37.   As a result of Plaintiff's comment, which was critical of Defendant Wimberly, former Parks and Recreation director Legion, and police chief Riley, Plaintiff was blocked from further expressing his political viewpoint on the public allegations or engaging in any other public dialogue on the Inkster Police Department Facebook page.

**City of Inkster Police Department Facebook Page**

38.    Defendant City of Inkster's Police Department Facebook page is a designated or limited public forum and subject to First Amendment protection.

39.    Defendant City of Inkster's Police Department Facebook page was intentionally created by the City of Inkster for public discourse and the "page is managed by the Inkster Police . . . ." (Exhibit G: Inkster Social Media Policy.)

40.    In the "About" and "Additional Information" sections of the Inkster Police Department's Facebook page, the Police Department states:

> This page was developed to assist us in providing the highest level of service possible in our community. **The hope is that this page will provide an avenue to communicate between the public and the police on breaking news or need to know issues that impact the fine citizens of Inkster** . . . Our highest priority is to protect [the residents and visitors of our city] against the criminal activities of others and to enhance their sense of security, safety and well being . . . I encourage you to contact us if you have a safety concern or if you feel that you need our services. I hope your visit to this page will be beneficial. We welcome your suggestions and/or comments on how well it serves your needs. (Exhibit G) (emphasis added).

41.    Defendant City of Inkster intentionally created a public forum on its Police Department Facebook page.

42.    Defendant City of Inkster publicized that the Inkster Police Department Facebook page is intended to function as an open forum for the public to engage in dialogue with the city about issues related to the city, its residents, and visitors.

11

43.    Defendant City of Inkster's statements in the "About" and "Additional Information" sections of the Inkster Police Department Facebook page demonstrate their intent to create a public forum to engage in an exhange of ideas with the public, not a one-way outlet for government speech.

44.    When Plaintiff posted the comment on Defendant City of Inkster Police Department Facebook page, the "About" and/or "Additional Information" section of the page included a government policy which stated in part: "The City of Inkster reserves the right at our sole discretion to block users or remove comments if the content posted promotes private businesses, political affiliations, ideologies or positions, or any other third-party advertisements, sales or promotions." (Exhbit F: City of Inkster Police Department Social Media Policy).

45.    The Defendants' official custom or policy on Facebook is to block social media users and/or remove comments based on the content of user's speech.

46.    Defendants' official custom or policy is to delete comments concerning polticial affiliations, ideologies or positions and block users if they express political statements.

47.    Defendants' official custom or policy is to also delete comments and/or block users who express viewpoints that they disagree with.

**City of Inkster Mayor Facebook Page**

48.    Defendant Patrick Andre Wimberly, while acting under color of law, maintains, operates, and posts on the municipal Facebook page "Patrick Wimberly-Mayor City of Inkster."

49.    Defendant Wimberly intentionally created the Patrick Wimberly-Mayor City of Inkster Facebook page and operates it as an extension of his political office.

50.    Defendant Wimberly's municipal Facebook page is a designated or limited public forum and subject to First Amendment protection.

51.    Defendant Wimberly's municipal Facebook page was intentionally created by Defendant Wimberly to engage in an exchange of ideas with the public, not as a one-way outlet for government speech.

52.    The banner photo above the title "Patrick Wimberly-Mayor City of Inkster" bears the City of Inkster logo and tagline "Inkster Let's Stay Home & Stay Safe."

53.    Defendant Wimberly maintains and control the Mayor's municipal Facebook page.

54.    Upon information and belief, Defendant Wimberly maintains and controls a personal Facebook page for his own personal use separate from the Patrick Wimberly-Mayor City of Inkster municipal Facebook page.

55.    Defendant Wimberly uses the Mayor's municipal Facebook page to disseminate information about city-related activities and issues, and routinely shares information from other municipal Facebook pages.

56.    Defendant Wimberly's municipal Facebook page enables comments to be posted from the general public on all of the posts he creates, and allows users to share the posts and direct message him through the platform.

57.    Defendant Wimberly also uses the Mayor's municipal page to speak directly to members of the public about issues concerning the city. Defendant Wimberly posts live videos of himself at City of Inkster public buildings with the U.S. flag behind him addressing public and followers of the Facebook page.

58.    Defendant Wimberly also engages in written dialogue with the public in the comments beneath posts.

59.    Defendant Wimberly hosted a Community Conversation with Facebook users on January 27, 2021 which was advertised on Facebook as a live streamed conversation with the Mayor from his government office. The event was live streamed using the Patrick Wimberly-Mayor City of Inkster Facebook page.

60.    Defendants City of Inkster and Mayor Wimberly's use of the Mayor's municipal page and engagement with the public in open dialogue about city issues demonstrate their intent to create a forum to engage in an exhange of ideas with the public, not a one-way outlet for government speech.

14

61.   On several occasions, Plaintiff has commented on Defendant Wimberly's municipal Facebook page, including critical comments about his investigation and involvement in the Alex Legion embezzlement allegations.

62.   Plaintiff has also exposed publicly on Defendant Wimberly's municipal Facebook page that Defendant Wimberly has owed delinquent property taxes to the City of Inkster while serving as Inkster's mayor.

63.   After Plaintiff posted critical comments about Defendant Wimberly, Defendants blocked Plaintiff from the Patrick Wimberly-Mayor City of Inkster Facebook page and restricted him from commenting, posting, and messaging the interactive municipal page.

64.   In Exhibit H: Mayor Wimberly Blocked Post Comparison, on the left-hand side is a view of Plaintiff's restricted privileges on the Patrick Wimberly-Mayor City of Inkster Facebook page. After Defendant Wimberly blocked Plaintiff from the page, he was not able to comment, post, or "Like" Facebook post by Defendant Wimberly. On the right-hand side, is a view of the privileges all other Facebook users who have not been blocked or restricted. Unlike Plaintiff, they are permitted to comment, post and participate in Defendant Wimberly's municipal Facebook page and public discussion.

65.   In Exhibit I: Mayor Wimberly Blocked Access Comparison, the top picture is a view of Plaintiff's restricted privileges of being blocked and prohibited

from sending the Defendant Wimberly a "direct message" or a private message to the municipal page's inbox. The bottom picture is a view of the privileges of all other Facebook users who have not been blocked or restricted by Defendant Wimberly who have access to send direct messages to Defendant Wimberly's municipal Facebook page.

66.    Defendant Wimberly operates the Mayor's municipal Facebook page under the same custom or policy as the Defendant City of Inkster Police Department Facebook page.

67.    Defendant Wimberly's custom or policy on the Patrick Wimberly-Mayor City of Inkster Facebook page is to block social media users and/or remove comments based on the content of the user's speech.

68.    Defendant Wimberly's custom or policy includes deleting comments that are critical of himself and/or actions taken by the City of Inkster and blocking those users from further interacting with the municipal Facebook page or discussion.

## COUNT I: POLICE DEPARTMENT FACEBOOK PAGE

## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS BY CITY OF INKSTER
## (42 U.S.C. § 1983)

69.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     The First Amendment to the United States Constitution prohibits abridgement of the freedom of speech. The First Amendment is incorporated against the States by the Fourteenth Amendment. Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

71.     A regulation of the time, place or manner of protected speech by a state actor is unconstitutional unless it (1) is content neutral; (2) narrowly tailored to further the city's compelling interests; and (3) leaves open ample alternative channels for communication of the information.

72.     A regulation that prohibits or abridges speech based on the viewpoint of the speaker is unconstitutional regardless of the type of forum in which the speech is expressed.

73.     In creating and maintaining the City of Inkster Police Department Facebook page and explicitly encouraging and enabling public dialogue, Defendant City of Inkster has intentionally created and established a designated or limited public forum.

74.     Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is not content-neutral.

75.     Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ."

17

is not narrowly tailored to promote either a compelling or significant state interest and does not leave open ample alternative channels for communication.

76.     Additionally, Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is substantially overbroad because it prevents and deters a substantial amount of First Amendment-protected speech and conduct.

77.     Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." violates the First Amendment to the United States Constitution on its face.

78.     Defendant City of Inkster blocked Plaintiff from interacting with the Inkster Police Department Facebook page and deleted his comments because Plaintiff expressed political views that were critical of the police department, its chief, and the former Parks and Recreation Commission director.

79.     By blocking Plaintiff and deleting his comments, Defendant City of Inkster engaged in unconstitutional content-based and viewpoint discrimination.

80.     Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is unconstitutional as applied to Plainiff.

81.     Defendant City of Inkster has no compelling interest to justify the content-based and/or viewpoint-based suppression of Plaintiff's speech about public corruption by a public official.

82.     Defendant City of Inkster's ban on political speech and advocacy is both facially unconstitutional and unconstitutional as applied to Plaintiff's political comments, which invoke the greatest constitutional protection.

83.     Because all speech presented as public comment to a political governing body can, by its very nature and purpose, be classified as political speech and/or advocacy, Defendant City of Inkster's policy of banning speech upon the basis such classification is unconstitutionally vague and naturally given to arbitrary and discriminatory application.

84.     In prohibiting all political speech and advocacy in its sole discretion, Defendant City of Inkster's policy sweeps far beyond the scope of any conceivably legitimate state interest it aims to further.

85.     By specifically prohibiting the right of public commenters to avail themselves of the opportunity to engage in advocacy and dialogue on pertinent city issues when presented with a public government forum, Defendant City of Inkster's policy facially infringes the First Amendment's right to petition clause.

86.     Defendants' policy, practices and custom included, but was not limited to, the following:

a. Failing to adequately train and/or supervise its employees and agents so as to prevent violations of citizens' constitutional rights.

b. Failing to adequately train and/or supervise its employees and agents regarding the constitution and the public's right to free speech in a public forum.

87. Defendant conduct was reckless because constitutional rights to free speech in a public forum was clearly established at the time of Plaintiff's injuries.

88. Defendants demonstrated "deliberate indifference" to the constitutional violations that a failure to train and/or supervise their employees would result in.

89. Defendants' failure to train and/or supervise their employees resulted in actual harm to Plaintiff when he was blocked and his comments deleted from the Defendants' Facebook page.

90. Defendant City of Inkster acted to pretextually deprive Plaintiff of his First Amendment rights in order to suppress Plaintiff's critical viewpoint.

91. As a direct and proximate result of Defendant City of Inkster's actions, Plaintiff suffered damages, including violation of his constitutional right to freedom of speech and right to petition the government, and emotional distress.

92. If an injunction is not entered enjoining enforcement of City of Inkster's policy, Plaintiff's speech will be chilled and he will suffer imminent harm because

he will not be able to comment on City of Inkster Police Department's Facebook page about relevant issues of public concern.

93.     There is no adequate remedy at law for the chilling effect and imminent or future harm Plaintiff will suffer if an injunction is not entered.

## COUNT II: MAYOR'S FACEBOOK PAGE

## VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS
## BY ALL DEFENDANTS
## (42 U.S.C. § 1983)

94.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

95.     The First Amendment to the United States Constitution prohibits abridgement of the freedom of speech. The First Amendment is incorporated against the States by the Fourteenth Amendment. Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

96.     A regulation of the time, place or manner of protected speech by a state actor is unconstitutional unless it (1) is content neutral; (2) narrowly tailored to further the city's compelling interests; and (3) leaves open ample alternative channels for communication of the information.

97.     A regulation that prohibits or abridges speech based on the viewpoint of the speaker is unconstitutional regardless of the type of forum in which the speech is expressed.

21

98.     In creating and maintaining the Patrick Wimberly-Mayor City of Inkster Facebook page and explicitly encouraging and enabling public dialogue, Defendants intentionally created and established a designated or limited public forum.

99.     Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." applied also to the Patrick Wimberly-Mayor City of Inkster municipal Facebook page.

100.    Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is not content-neutral.

101.    Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is not narrowly tailored to promote either a compelling or significant state interest and does not leave open ample alternative channels for communication of issues concerning the city on Facebook.

102.    Additionally, Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." is substantially overbroad because it prevents and deters a substantial amount of First Amendment-protected speech and conduct.

103.    Defendant City of Inkster's policy "to block users or remove comments if the content posted promotes . . . political affiliations, ideologies or positions . . ." violates the First Amendment to the United States Constitution on its face.

104.    Defendants have a custom or policy of blocking users and removing political speech from their municipal Facebook pages.

105.    Defendants have a custom or policy of blocking users and removing comments based on the viewpoint expressed by the speaker.

106.    Defendant Wimberly blocked Plaintiff from interacting with the Patrick Wimberly-Mayor City of Inkster Facebook page and deleted his comments because Plaintiff expressed political views that were critical of the Mayor and his involvement in the Alex Legion investigation.

107.    Defendants' ban on political speech and advocacy is both facially unconstitutional and unconstitutional as applied to Plaintiff's political comments, which invoke the greatest constitutional protection.

108.    At all times relevant to facts herein, Defendant Wimberly, was acting under the color of state law.

109.    In his official capacity as Mayor for the City of Inkster, Defendant Wimberly intentionally created and operated the Facebook Page "Patrick Wimberly-Mayor City of Inkster" as a designated or limited public forum.

110.   Defendant Wimberly intentionally created the Facebook page for use by the public as a place for sharing information about government affairs and for public dialogue with the Mayor.

111.   Defendants have no compelling interest to justify the content and/or viewpoint-based suppression of the Plaintiff's speech on the Defendants' Facebook page about the issue of public allegations of embezzlement and corruption.

112.   By specifically prohibiting the right of public commenters to avail themselves of the opportunity to engage in public dialogue and political speech when presented with a public government forum, through the Facebook platform, Defendants' policy facially infringes the First Amendment right to petition clause.

113.   Defendants' policy and custom included, but was not limited to, the following:

    a.   Failing to adequately train and/or supervise its employees and agents so as to prevent violations of citizens' constitutional rights.

    b.   Failing to adequately train and/or supervise its employees and agents regarding the constitution and the public's right to free speech in a public forum.

114.   Defendant conduct was reckless because constitutional rights to free speech in a public forum was clearly established at the time of Plaintiff's injuries.

115.    Defendants demonstrated "deliberate indifference" to the constitutional violations that a failure to train and/or supervise their employees would result in.

116.    Defendants' failure to train and/or supervise their employees resulted in actual harm to Plaintiff when he was blocked and his comments deleted from the Defendants' Facebook page.

117.    Defendants also had adequate notice that Plaintiff intended to engage in protected First Amendment speech on Defendants' Facebook pages, and thus could not have reasonably believed that deleting Plaintiff's comments and banning him from the municipal Facebook page was constitutional.

118.    On March 1, 2021, Plaintiff emailed the City of Inkster City Attorneys David Jones and Matthew Wayne informing them that he intended to comment and interact on government official's social media pages and that these comments were afforded First Amendment protection. (Exhibit J: Plaintiff March 1, 2021 email to City Attorney).

119.    Defendants acted to pretextually deprive Plaintiff of his First Amendment rights in order to suppress Plaintiff's critical viewpoint.

120.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including violation of his constitutional right to freedom of speech and right to petition the government, and emotional distress.

121.    If an injunction is not entered enjoining enforcement of City of Inkster's policy, Plaintiff will suffer imminent harm because he will not be able to comment on Patrick Wimberly-Mayor City of Inkster Facebook page about relevant issues of public concern.

122.    There is no adequate remedy at law for the imminent or future harm Plaintiff will suffer if an injunction is not entered.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Declare that Plaintiff's constitutional rights have been and are being violated;

b.  Declare that Defendants' policy and practice of blocking, restricting, and impeding citizens from commenting or posting on their municipal Facebook pages while engaging in political speech or advocacy violates the First and Fourteenth Amendments to the United States Constitution facially and as applied to Plaintiff;

c.  Enter preliminary and permanent injunctive relief barring enforcement of the above-referenced policy;

d.  Award Plaintiff's compensatory and nominal damages;

e.  Award Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

f.   Grant other and further relief as the Court deems just and appropriate.

## **Jury Demand**

Plaintiff demands a jury for all issues so triable.

Respectfully Submitted,

/s/ Bonsitu Kitaba-Gaviglio
Bonsitu Kitaba-Gaviglio (P78822)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6823
bkitaba@aclumich.org
dkorobkin@aclumich.org

/s/ Howard Burdett
Howard Burdett (P63185)
Cooperating Attorney, American Civil
  Liberties Union Fund of Michigan
Howard & Howard Attorneys PLLC
450 W 4th St.
Royal Oak, MI 48067-2557
(248) 723-0381
bburdett@howardandhoward.com

*Attorneys for Plaintiff*

27

**Certificate of Service**

I hereby certify that on July 2, 2021 I electronically filed the foregoing document

through the court's electronic filing system, and that the court will serve opposing

counsel through the electronic filing system.

/s/ Howard Burdett
Howard Burdett (P63185)
Cooperating Attorney, American Civil
   Liberties Union Fund of Michigan
Howard & Howard Attorneys PLLC
450 W 4th St.
Royal Oak, MI 48067-2557
(248) 723-0381
bburdett@howardandhoward.com